UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STACI LYN CURLEE,

      Plaintiff,

v.                                                      Case No. 8:22-cv-1697-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

**O R D E R**

      The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

      The Plaintiff was born in 1967, has a high school education, and has past relevant work experience as an x-ray technician. (R. 63, 70, 242, 301). In March 2020, the Plaintiff applied for DIB, alleging disability as of October 2016 due to lupus, seizures, anemia, a right wrist injury, and a torn ligament. (R. 63–64, 202–03, 300). The Social Security Administration (SSA) denied the Plaintiff's DIB application both initially and on reconsideration. (R. 108, 118).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in November 2021.  (R. 34–60, 131).  The Plaintiff was represented by counsel at that proceeding and testified on her own behalf.  (R. 38–50).  A vocational expert (VE) also testified.  (R. 50–58).

In a decision issued in January 2022, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in October 2016 through her date last insured in December 2021; (2) had the severe impairments of anemia, degenerative disc disease, and systemic lupus erythematosus (SLE);[1] (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to various limitations;[3] and (5) based upon the VE's testimony, could perform her past relevant work as an x-ray technician.  (R. 12–28).  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 28).

---

[1] SLE "is a chronic inflammatory disease that can affect any organ or body system.  It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, [and] involuntary weight loss)."  *Chavis v. Comm'r of Soc. Sec.*, 2019 WL 5957502, at *3 (M.D. Fla. Nov. 13, 2019) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00(D)(1)(a)).

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. § 404.1520(a)(4).  When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits.  *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] These restrictions included that the Plaintiff could frequently use her left upper extremity for reaching; could frequently perform bilateral grasping and fine manipulation; could frequently crawl, crouch, kneel, stoop, balance, and climb ramps or stairs; could not climb ladders, ropes, or scaffolds; and could not be exposed to workplace hazards, such as unprotected heights and dangerous moving machinery.  (R. 22).

The Appeals Council denied the Plaintiff's request for review.   (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted)

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months."   42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4]   A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."   *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5]   Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals any of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other occupations in the national economy

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

given her RFC, age, education, and work experience.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)).   Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to assessing whether the Commissioner applied the proper legal standards and whether the Commissioner's decision is buttressed by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  In evaluating whether substantial evidence bolsters the Commissioner's determination, a court "may not decide the facts anew, make

credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises six challenges on appeal: (1) the ALJ did not properly evaluate the medical opinion rendered by one of her physicians, Dr. Rajan Sareen; (2) the ALJ's RFC determination did not correctly account for the Plaintiff's mild limitations in maintaining concentration, persistence, and pace or in adapting or managing herself; (3) the ALJ did not sufficiently consider the Plaintiff's right wrist impairment; (4) the ALJ erred in finding that the Plaintiff could perform work with specific vocational preparation (SVP)[6] levels of 2 and 7; (5) the ALJ did not appropriately assess the Plaintiff's epilepsy; and (6) the ALJ failed to recognize that he reopened the Plaintiff's prior disability claim upon reconsidering evidence presented in the Plaintiff's first disability application, which the Commissioner denied and the Plaintiff did not appeal. (Doc. 15 at 1–2, 13–29; Doc. 18).[7] After careful review of the

---

[6] An SVP level is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Dictionary of Occupational Titles, App'x C, Components of the Definition Trailer, § II, 1991 WL 688702 (G.P.O. 4th ed. 1991).

[7] The Court has reordered the Plaintiff's challenges to facilitate its disposition of same.

parties' submissions and the record, the Court finds that the Plaintiff's first claim of error has merit and alone warrants remand.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and her ability to perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, the ALJ must consider all medical opinions in a claimant's case record, together with other relevant evidence. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)); 20 C.F.R. § 404.1513a(b)(1). A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant may still be able to do notwithstanding her impairments; whether the claimant is restricted in her capacity to engage in various work activities; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. § 404.1520c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the source who offered the assessment. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as

whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important.   20 C.F.R. § 404.1520c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source has articulated record evidence buttressing his own opinion, while consistency deals with whether a medical source's opinion conforms to other evidence in the record.   20 C.F.R. § 404.1520c(c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted).  The amended Regulations require an ALJ to discuss supportability and consistency but do not obligate him to explain how he evaluated the other three factors.  20 C.F.R. § 404.1520c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).  In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion if the evidence dictates a contrary finding.  *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, Dr. Sareen performed an examination of the Plaintiff in September 2021.  (R. 968–71).  As a result of that examination, Dr. Sareen determined that the Plaintiff had, *inter alia*, normal cranial nerves, normal coordination, but "decreased

sensory" in her right thigh; "normal motor, normal deep tendon reflexes and plantar reflexes;" normal spine curvature with no deformity but positive for tenderness and para-vertebral spasm; swelling and tenderness in her joints, hands, and lower spine but no redness or deformity; 100% grip strength on her left side but only 75% on her right side; decreased dexterity, as well as decreased range of motion in multiple joints; and straight leg raising capacity at 90% and 75% in the sitting and supine positions, respectively. (R. 969). Dr. Sareen also found that the Plaintiff's gait was normal and that there was no medical necessity for her to employ an assistive device. (R. 970). Dr. Sareen ultimately assessed the Plaintiff as suffering from anxiety, depression, seizure disorder, chronic back pain, and multiple joint pain; tenderness and decreased range of motion in a number of joints; intermittent chest and abdominal pain, the former of which was sharp; and a history of Raynaud's syndrome,[8] Sjögren's syndrome,[9] SLE, and occasional grand mal seizures. (R. 970–71).

Contemporaneously with his examination, Dr. Sareen completed a Medical Source Statement, in which he opined that the Plaintiff was confined to occasionally lifting less than ten pounds due to an injured right wrist; standing and/or walking for less than two hours in an eight-hour workday due to back pain; and sitting for less than

---

[8] "Raynaud's syndrome is a disease marked by spasms of the blood vessels in the limbs that causes the affected limb to have a bluish discoloration. It is typically caused by exposure to cold or emotional strain." *McManus v. Barnhart*, 2004 WL 3316303, at *3 n.25 (M.D. Fla. Dec. 14, 2004).

[9] Sjögren's syndrome "'is a disorder of [the] immune system identified by its two most common symptoms—dry eyes and a dry mouth.'" *Gray v. Comm'r of Soc. Sec.*, 2019 WL 3934441, at *1 n.1 (M.D. Fla. Aug. 20, 2019) (quoting Mayo Clinic, *Sjögren's syndrome*, https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216).

two hours in an eight-hour workday due to back pain and stiffness. (R. 966–67). Dr. Sareen additionally opined that the Plaintiff could only climb, balance, stoop, bend, kneel, crouch, and crawl for less than one third of the workday but had no manipulative limitations, and that she required thirty-to-forty-minute breaks every thirty minutes given her decreased range of motion. *Id.* And lastly, Dr. Sareen opined that the Plaintiff needed to elevate her legs above her heart, that she had mental restrictions due to her anxiety and depression, that she would be off task more than sixty percent of the time, and that she would be absent from work three days a month due to her impairments and medical appointments. *Id.*

In his decision, the ALJ discussed Dr. Sareen's opinion and found it "unpersuasive." (R. 26). The ALJ reasoned:

> According to Dr. Sareen, [the Plaintiff] is limited to a less than sedentary level of exertion with less than occasional engagement in any postural maneuvers and many mental limitations. However, the record contains only one radiographic study of [the Plaintiff's] lumbar spine that revealed only "mild" abnormalities, and no radiographic studies of [the Plaintiff's] hips, knees, or ankles. A recent in-person examination of [the Plaintiff] on July 14, 2021, revealed normal muscle tone, bulk, and strength with normal gait and stance. The record is also nearly devoid of any evidence of mental health treatment . . . , and certainly devoid of intensive and specialized mental health treatment. This lack of treatment contradicts the mental limitations that [Dr. Sareen] indicated in this opinion. Overall, the medical record lacks in evidence that would support the limitations that Dr. Sareen included in this opinion. Thus, the undersigned views this opinion as unpersuasive.

*Id.* (internal record citations omitted).

The Plaintiff now argues that the ALJ's analysis of Dr. Sareen's opinion did not adequately address the supportability factor as required by the Regulations. (Doc. 15 at 27; Doc. 18 at 2). The Court agrees.

The Court begins by acknowledging that, as the above excerpt demonstrates, the ALJ seemingly satisfied the consistency requirement by explaining that a lumbar spine radiographic study of the Plaintiff revealed only mild abnormalities, that a July 2021 examination of her largely resulted in normal findings, and that "[t]he record [was] devoid of any evidence [that she underwent] mental health treatment." (R. 26). On the issue of supportability, however, the ALJ never took into account Dr. Sareen's own examination findings and how that evidence did or did not cohere with his opinion. *See* 20 C.F.R. § 404.1520c(c)(1) (supportability requires an assessment of the evidence "presented by" the opining source). Without such an explanation, the Court cannot discern whether substantial evidence buttresses the ALJ's conclusion that Dr. Sareen's assessments were unpersuasive. *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable [the court] to conduct meaningful review."); *Brown v. Comm'r of Soc. Sec.*, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (noting that when evaluating medical opinions under the new Regulations, the ALJ must "*explain* his decision, particularly with respect to supportability and consistency") (citation omitted); *Walker v. Kijakazi*, 2022 WL 3686707, at *5 (N.D. Fla. July 25, 2022) (stating that an ALJ's articulation of consistency and supportability must allow the court to undertake a "meaningful review" of whether the ALJ's reasoning was properly substantiated by

the record) (internal quotation marks and citation omitted), *report and recommendation adopted,* 2022 WL 3684609 (N.D. Fla. Aug. 25, 2022); *Spaar v. Kijakaz*i, 2021 WL 6498838, at *4 (S.D. Ga. Dec. 28, 2021) ("The ALJ is completely silent on the 'supportability' of [the medical] opinion, which is plainly an error[.]"), *report and recommendation adopted*, 2022 WL 141613 (S.D. Ga. Jan. 14, 2022).   As a result, reversal and remand is required.  *See Brown*, 2021 WL 2917562, at *4 (finding that an ALJ's failure to explain his analysis of the supportability and consistency factors "requires reversal and remand") (collecting cases); *Spaar*, 2021 WL 6498838, at *4 (deeming an ALJ's silence on the issue of supportability as necessitating remand).

In an attempt to remedy this deficiency, the Commissioner argues that "it is clear from the ALJ's discussion of the record and [his] rationale that he . . . considered [the supportability and consistency] factors."  (Doc. 17 at 8).  But the Commissioner cites only to examples of the ALJ's reliance on evidence from *other* sources, which speaks to the consistency, not the supportability, of Dr. Sareen's opinion.  *Id.*

The Commissioner also contends that the "[R]egulations do not require the ALJ to use any 'magic language' or follow a particular formula when addressing the supportability and consistency factors."  *Id.*  This contention misses the point.  The question here is not whether the ALJ adorned his finding with certain verbiage but whether he adequately evaluated the degree to which Dr. Sareen identified record evidence buttressing his own opinion.  *See Pierson v. Comm'r of Soc. Sec.*, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020) ("[T]he new [R]egulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is

superfluous."), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020).  For the reasons set forth above, the ALJ did not do so here.

The ALJ's decision suffers from another related problem as well.   In determining the Plaintiff's RFC, the ALJ noted that the Plaintiff was the subject of a number of in-person examinations, "[t]he most recent of [which was performed by] a specialist in arthritis . . . on August 12, 2021."  (R. 23).  The ALJ explained that this specialist "found no swelling, tenderness, or limitations in any of [the Plaintiff's] joints from the shoulders to [the] hips to [the] knees to [the] ankles."  (R. 23).  Dr. Sareen, however, evaluated the Plaintiff even more recently, in September 2021, and described the Plaintiff as experiencing swelling, tenderness, and a decreased range of motion. *See* (R. 969); *see also* (R. 971) (stating that the Plaintiff "ha[d] tenderness and decreased [range of motion] in multiple joints").  The Court cannot say whether the ALJ took into account these findings and discounted them, or overlooked them altogether.  And to the extent the results of these examinations were inconsistent with each other, it was incumbent upon the ALJ to consider the evidence and to resolve any such discrepancies.  *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984) (per curiam) (discussing how an ALJ must resolve conflicting medical evidence); *Sowards v. Comm'r of Soc. Sec.*, 2014 WL 688053, at *3 (M.D. Fla. Feb. 21, 2014) ("It is for the ALJ, not the [c]ourt, to resolve conflicts in the evidence, especially the medical opinion evidence.").

Based upon the foregoing, the Court need not address the Plaintiff's remaining challenges.  *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir.

2015) (per curiam) (deeming that there was no need to analyze any additional issues because the case was reversed due to other dispositive errors); *Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to discuss the claimant's remaining arguments due to the conclusions reached in remanding the action); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other claims raised) (citations omitted).  On remand, however, the ALJ must consider all of the record evidence in accordance with the governing case law and the applicable regulatory provisions in determining the Plaintiff's impairments.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (noting that the ALJ must evaluate the whole record on remand).

IV.

In light of all the above, it is hereby ORDERED:

1.     The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2.     The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3.     The Court reserves jurisdiction on the matter of costs pending a further motion.

SO ORDERED in Tampa, Florida, this 28th day of September 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record